# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED AUBURN INDIAN
COMMUNITY OF THE AUBURN
RANCHERIA,

    Tribal Office
    10720 Indian Hill Road
    Auburn, CA 95603

          *Plaintiff*,

      v.

KENNETH LEE SALAZAR, Secretary,
U.S. Department of the Interior;

    **Serve on:**
    1849 C Street, NW, Mailstop 7329
    Washington, DC 20240

KEVIN K. WASHBURN, Assistant
Secretary-Indian Affairs, U.S.
Department of the Interior;

    **Serve on:**
    1849 C Street, NW, Mailstop 4141
    Washington, DC 20240

BUREAU OF INDIAN AFFAIRS;

    **Serve on:**
    1849 C Street, NW, Mailstop 4606
    Washington, DC 20240

Civil Action No. 12-1988

DEPARTMENT OF THE INTERIOR;

**Serve on:**
1849 C Street, NW, Mailstop 7329
Washington, DC 20240

and JOHN DOE #1,

                    *Defendants.*

# COMPLAINT

Plaintiff United Auburn Indian Community of the Auburn Rancheria

("UAIC"), by and through its undersigned attorneys, files this Complaint and

alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff UAIC brings this action against the United States Department

of the Interior ("DOI"); the Bureau of Indian Affairs ("BIA"); Kenneth L. Salazar,

Secretary, U.S. Department of the Interior; Kevin K. Washburn, Assistant

Secretary-Indian Affairs, U.S. Department of the Interior; and Other Unknown

"John Doe" Governmental Defendants (collectively, "Defendants") for an

injunction and declaratory relief precluding the taking of a 40-acre parcel of land

located near Olivehurst, Yuba County, California ("Yuba Site") into trust for a

group of individuals who identify themselves as the Enterprise Rancheria of Maidu

Indians of California ("Enterprise Rancheria" or "Enterprise Tribe") and vacating the Secretarial Determination under the Indian Gaming Regulatory Act ("IGRA") that the use of the Yuba Site for gaming purposes would not be detrimental to the surrounding community.

2.    The IGRA generally prohibits Indian gaming on lands acquired in trust after October 17, 1988, subject to a few exemptions.  25 U.S.C. § 2719.  The Enterprise Rancheria requested an exemption for the Yuba Site pursuant to IGRA Section 20(b)(1)(A), which provides that land acquired into trust after October 17, 1988, is eligible for gaming if:

> the Secretary, after consultation with the Indian tribe and appropriate State and local officials, including officials of other nearby Indian tribes, determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination.

25 U.S.C. § 2719(b)(1)(A).

3.    The Secretarial Determination pursuant to this exemption that the proposed casino development is in the "best interest" of the Enterprise Tribe and would not be detrimental to the surrounding community was an abuse of discretion and is arbitrary, capricious, and contrary to law.  Plaintiff respectfully requests that this Court review and vacate the final Record of Decision ("ROD") of the BIA issued by the Assistant Secretary, Indian Affairs of the DOI on September 1, 2011,

approving the proposed casino development pursuant to 25 C.F.R. Part 292, and

the final ROD issued on November 21, 2012, pursuant to 25 C.F.R. Part 151,

approving the taking of land in trust, as distinct from the question of gaming

(collectively, the "RODs").  The Assistant Secretary apparently considered the

subject matter of the "292" ROD definitive as to the taking of land into trust for the

purposes of gaming, essentially overtaking the consideration of taking the land into

trust in the first instance, the subject of the "151" ROD.  In essence, the Secretary

and the BIA have conflated the separate and independent considerations—(a)

taking of land into trust and (b) approval of gaming—in each ROD, making it

impossible to tell which ROD is the basis for the decision to take the land into trust

in the Secretary's final notice.  It is clear that the Secretary is intending to take the

land into trust (the action under Part 151) only because he has approved the

gaming on this land (the action under Part 292).  The fee-to-trust ("FTT") transfer

proposed in the RODs is a final agency action.  25 C.F.R. § 2.6; 5 U.S.C. § 704.

This Court should vacate the RODs for several reasons.

4.      Defendants failed adequately to consider the significant detrimental

impact that the planned casino development will have on the UAIC.  The proposed

construction of a major casino complex on the Yuba Site would cause substantial

harm to the UAIC by permanently and irreparably altering the environment on

lands with dominant historic and cultural ties to the UAIC.

5.     Defendants failed to take a "hard look" at the environmental, socio-economic, aesthetic, historic, and cultural impacts of the proposed action, as required by the National Environmental Policy Act ("NEPA").  42 U.S.C. §§ 4321 *et seq.*; 40 C.F.R. § 1508.8.  Taking a "hard look" "places upon an agency the obligation to consider every significant aspect of the environmental impact of a proposed action." *Balt. Gas & Elec. Co. v. NRDC, Inc.*, 462 U.S. 87, 97 (1983) (citation and internal quotation marks omitted).  "Simple, conclusory statements of 'no impact' are not enough to fulfill an agency's duty under NEPA." *Found. on Econ. Trends v. Heckler*, 756 F.2d 143, 154 (D.C. Cir. 1985).

6.     Defendants ignored or failed to fully consider or adequately address the impact on land resources, water resources, air quality, and other negative impacts of the proposed casino and related facilities approved in the RODs. Additionally, Defendants failed to apply a fair and unbiased analysis of the human impacts that will be caused by transferring the Yuba Site into trust for gaming purposes, as required by NEPA.  For example, Defendants failed adequately to consider the detrimental economic impact and thus critical impacts on tribal governmental operations and member services that the casino development will have on the UAIC.  Furthermore, Defendants failed adequately to consider alternatives to the selected Preferred Alternative—*i.e.*, taking the Yuba Site into trust for gaming purposes.  The approval of the Final Environmental Impact

Statement ("FEIS") for the FTT should be vacated.  Further, the RODs, which rely on the inadequate FEIS, should be vacated.

7.     Defendants failed to comply with 25 C.F.R. Part 151 and 25 C.F.R. Part 292 when reviewing and approving the RODs, in violation of the Administrative Procedures Act ("APA").  5 U.S.C. §§ 702, 704, 706.  The DOI's and BIA's failures to comply included, but were not limited to, failure to consult with neighboring tribes and failure to consider comments from officials, citizens, and neighboring tribes.  For example, the DOI and BIA failed to solicit Plaintiff UAIC's input.  Furthermore, once the UAIC learned that the BIA was soliciting comments on the Enterprise Tribe's application to have the Yuba Site taken into trust, the DOI and BIA gave short shrift to the UAIC's concerns.

8.     Defendants failed to comply with 40 C.F.R. § 1506.5 when preparing and approving the FEIS pursuant to a third-party contract, in violation of the agency regulations and the APA.  5 U.S.C. §§ 702, 704, 706.

9.     Rather than independently assess the merits of the proposed transfer of the Yuba Site into trust for gaming purposes, the BIA hired Analytical Environmental Services ("AES") to prepare the Draft Environmental Impact Statement ("DEIS") and FEIS.  At the time that AES prepared the DEIS and FEIS at issue here, AES was working with and as a part of tribal consortiums and casino interests.  The BIA failed to "furnish guidance and participate in the preparation

and . . . independently evaluate the statement prior to its approval," as required by 40 C.F.R. § 1506.5(c).  Accordingly, the RODs, which were based on the unduly influenced and insufficiently supervised FEIS, should be vacated.  25 C.F.R. § 151.11(b) provides that "as the distance between the tribe's reservation and the land to be acquired increases, the Secretary shall give greater scrutiny to the tribe's justification of anticipated benefits from the acquisition."  The Enterprise Rancheria is located some 36 miles from the Yuba Site—almost twice the distance between the Auburn Rancheria and the Yuba Site— which renders the proposed acquisition subject to heightened scrutiny, which it cannot pass.

10.     The Secretary's approval of the RODs is arbitrary, capricious, an abuse of discretion, and not in accordance with law.  5 U.S.C. § 706.  The RODs should be vacated and their implementation enjoined.  Further, a declaratory judgment should be in entered in Plaintiff UAIC's favor.

## THE PARTIES

11.     Plaintiff UAIC is a federally recognized Indian Tribe located on the Auburn Rancheria in the Sierra Nevada foothills in Auburn, California—less than 25 miles from the Yuba Site.

12.     The individual Defendants are:

a.  Kenneth L. Salazar, Secretary of the United States Department of the Interior;

7

    b. Kevin K. Washburn, the current Assistant Secretary of Indian Affairs

       for the United States Department of the Interior; and,

    c. Other Unknown "John Doe" Governmental Defendants.

All of the individual Defendants are sued in their official capacities and are named Defendants as a result of actions and decisions of the DOI and BIA, for which they bear some responsibility.

13.    Defendant Department of the Interior is a cabinet level agency of the United States and is responsible for managing the affairs of Indian tribes through the BIA and the Office of Inspector General.  The DOI also is responsible for promulgating and ensuring compliance with its regulations.

14.    Defendant Bureau of Indian Affairs is a bureau within the United States Department of the Interior.  BIA provides services to American Indians and Alaska Natives and manages resources held in trust by the United States for American Indian, Indian tribes, and Alaska Natives.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201 and 2202.  Plaintiff UAIC seeks declaratory, injunctive, and further necessary relief against each and all of the Defendants as allowed by these and other applicable statutes.

16.     This Court has personal jurisdiction over the Defendants because each defendant has the requisite minimum contacts with the District of Columbia.  The DOI is a federal agency established by the government of the United States.

17.     The United States waived sovereign immunity from suit under 5 U.S.C. § 702 and 28 U.S.C. § 2409a.  There is an actual controversy between the parties that evokes the jurisdiction of this Court regarding decisions by, and actions of, the Defendants that are subject to review by this Court.  There has been a final agency action that is reviewable by this Court.  25 C.F.R. § 2.6(c); 25 C.F.R. § 151.12(b).  This case is ready for judicial review.  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2205-10 (2012).

18.     Venue in the United States District Court for the District of Columbia is proper under 28 U.S.C. §§ 1391(b)(2) and (e), and 5 U.S.C. § 703.

## FACTUAL BACKGROUND

### A.     Historical Background.

#### 1.     The UAIC.

19.     The Maidu Indians traditionally resided in north-central California. Three distinct subgroups comprise the Maidu: the Mountain Maidu, the Nisenan, and the Konkow.

20.     Today, the UAIC is comprised mainly of Nisenan, Northern Sierra, and Valley Miwok Indians.

21.     Ancestral Nisenan lands in Yuba and Sutter Counties include those areas along the Sacramento, Bear, Yuba, and Feather Rivers, and the broader Nisenan territory includes all of Yuba County.  Within Yuba County, Nisenan territories spanned from more than 10 miles north of Yuba City/Marysville to several miles south, past the town of Nicolaus.

22.     Today, the communities of Yuba City, Marysville, Plumas Lake, and Nicolaus are located where major Nisenan villages once stood.

23.     In 1917, the United States acquired land in trust for the Auburn Band, a mixed group of Nisenan and Miwok Indians living near Auburn, and formally established a reservation known as the Auburn Rancheria.

24.     Following the 1953 enactment of the California Rancheria Acts, which authorized the termination of federal trust responsibilities to numerous California Indian tribes, most of the land comprising the Auburn Rancheria was sold (with the exception of a 2.8-acre parcel containing a tribal church and park), and the Auburn Band was terminated in 1967.

25.     In 1994, after surviving members of the Auburn Band reorganized, Congress passed the Auburn Indian Restoration Act ("Restoration Act"), which restored the tribe's federal recognition.  Indian Restoration Act, Pub. L. No. 103-434, 108 Stat. 4533, *codified at* 25 U.S.C. §§ 1300l-1300l-7.  The Restoration Act also designates Yuba County, together with several other counties, as the UAIC

"service area" and provides that the DOI Secretary "may accept any additional acreage in the Tribe's service area pursuant to the authority of the Secretary . . . ." 25 U.S.C. § 1300l-6(7); 25 U.S.C. § 1300l-2(a).

26.     Pursuant to the Restoration Act, Yuba County, as a UAIC "service area," is designated as an area where UAIC members may be found and may receive federal benefits.

27.     Membership in the UAIC is strictly limited and includes only those individuals who were listed on the 1959 Auburn Rancheria roll, those who meet requirements to be listed on that role, or their direct lineal descendants.  25 U.S.C. § 1300l-3(b)(1).

28.     Many of today's UAIC members are descendants of the Nisenan people, and elders in the UAIC recall visiting relatives in Yuba City and Marysville.

29.     The UAIC, as descendants of the Nisenans, have strong cultural ties to Yuba County; more than 50 known ethnographic Nisenan villages are located in Yuba and Sutter Counties, as well as numerous sacred sites known to contain human remains.  Archaeological reports indicate that the entire Feather River Valley is culturally affiliated with the Nisenan people.

### 2.      The Enterprise Tribe.

30.      In contrast to the Nisenan Indians, the Konkow historically were located in what is now known as Butte County, California, where the four branches of the Feather River converge.  The Enterprise Rancheria is a Konkow group, not a Nisenan group.

31.      The languages and cultures of the Nisenan and Konkow Indians were distinct, and an anthropological study suggests that the Nisenan and Konkow migrated to the Central Valley and foothills at different times in unassociated groups.

32.      In 1915, DOI Special Indian Agent John Terrell, tasked with identifying groups of Indians in California and purchasing land for them to live on, took a census of Indians in and near Enterprise in Butte County, California.  Mr. Terrell identified 51 Indians and subsequently purchased two 40-acre parcels for these individuals to occupy, called Enterprise 1 and Enterprise 2 (together identified by the DOI as the Enterprise Rancheria).  The first site, Enterprise 1, is located approximately 11 miles northeast of Oroville, California, in Butte County.

33.      The Federal Government recognized the residents of Enterprise 1 as the Enterprise Tribe in 1915.

34.      The current residents of the Enterprise 1 tract are descendants of those listed on the 1915 census, and the tract is currently subject to the territorial

jurisdiction of the Enterprise Tribe and held in trust by the United States.
Accordingly, the Enterprise 1 parcel is eligible for gaming.

35.     The second parcel, Enterprise 2, was condemned in 1965, in the
course of constructing the Oroville Dam.

36.     In 1935, the residents of the two parcels voted not to organize
themselves under the Indian Reorganization Act ("IRA") and operated without a
tribal constitution until 1996.

37.     The Enterprise Tribe's 1996 constitution created two classes of tribal
members: "lineal members" and "non-lineal" members.  These distinctions were
retained in later versions of the tribe's constitution, adopted in 2002 and 2003.
Pursuant to the 2003 constitution, all persons whose names appear on the 1915
census, as well as their lineal descendants, are eligible for "Lineal Membership" in
the Enterprise Tribe.

38.     However, any individual (or their direct descendants) listed on any
United States Census of the Maidu Indians is eligible for "Non-Lineal Membership"
in the Enterprise Tribe. These "adopted" tribal members are not descendants of the
Konkow Indians identified by the federal government in the 1915 census; rather,
they were added from throughout the Feather River region to enable them to
qualify for additional federal Indian benefits.

39.     Non-Lineal Members are not afforded full privileges in the tribe; they are not eligible to hold any elected or appointed offices of the Enterprise Rancheria, or to receive non-discretionary funds of the Enterprise Rancheria.  Accordingly, even though the Enterprise Rancheria purports to rely upon the membership of Non-Lineal Members in its application to the DOI for the Yuba Site, these individuals would not even benefit from any funds accrued as a result of the proposed casino project.

**B.      The Enterprise Tribe's Land Application.**

40.     On June 26, 2002, the Enterprise Tribe resolved to submit a request to the BIA to acquire 40 acres of land in trust in Yuba County, California (the Yuba Site), and submitted the request to the BIA on August 13, 2002.

41.     The Yuba Site is described as follows:

> That parcel of land lying within the northeast quarter of Section 22, T. 14 N., R. 4 E., M.D.B.&M. in Yuba County, California and being described as follows:

> Commence at the quarter section corner common to said Section 22 and Section 15, T. 14 N., R. 4 E., M.D.B.&M. and being marked by a brass monument stamped LS3341 in a monument well as shown on Record of Survey No. 2000-15, filed in Book 72 of Maps, page 34, Yuba County Records; thence South 0E 28' 11" East, along the line dividing said Section 22 into east and west halves, 2650.73 feet to a brass monument stamped LS3341 in a monument well as shown on said Record of Survey No. 2000-15 and marking the center of said Section 22; thence North 89E 31' 24" East, 65.00 feet to a point on the east right-of-way line of Forty Mile Road; thence North 0E 28' 11" West, along said east right-of-way line of

Forty Mile Road, 45.53 feet to the POINT OF BEGINNING; thence from said point of beginning continue along said east right-of-way line of Forty Mile Road the following courses and distances: North 0E 28' 11" West, 1133.70 feet; thence North 5E 14' 27" East, 50.25 feet; thence North 0E 28' 11" West, 136.91 feet; thence leaving said east right-of-way line of Forty Mile Road run North 87E 59' 10" East, 1315.48 feet; thence South 0E 28' 11" East, 1320.48 feet; thence South 87E 59' 10" West, 1320.48 feet to the point of beginning and containing 40.00 acres more or less.

42.     The Yuba Site is <u>not</u> located on the Enterprise Rancheria; rather, it is located approximately 36 miles from the boundaries of the Enterprise Rancheria. Accordingly, the BIA and DOI treated the application as one for an off-reservation acquisition.

43.     The Yuba Site falls within the UAIC's historic and traditional land base.  The UAIC trust land is located approximately 20 miles from the Yuba Site— much closer than the Enterprise Rancheria.

44.     The Enterprise Rancheria also requested that the Yuba site be determined eligible for gaming pursuant to Section 20(b)(1)(A) of IGRA, 25 U.S.C. § 2719(b)(1)(A).  Specifically, the tribe proposed to construct and operate a 170-room resort hotel and 1,700-machine gaming facility on the land.

45.     The Enterprise Rancheria subsequently submitted a formal request for the two-part determination set forth in IGRA Section 20(b)(1)(A) on April 13, 2006, which requires the Secretary to determine that a gaming establishment on newly acquired lands would be in the "best interests" of the tribe and would not be

detrimental to the surrounding community.  The Governor also must concur in the determination.  25 U.S.C. § 2719(b)(1)(A).

46.     On May 20, 2008, new regulations pertaining to IGRA Section 20 were adopted.

47.     The Enterprise Tribe amended and restated its request for a two-part determination on March 17, 2009, to conform with requirements found in the new regulations, 25 C.F.R. §§ 292.16-19.

48.     Pursuant to 25 C.F.R. § 292.19(a), the Regional Director of the BIA is required to solicit comments from "[o]fficials of nearby Indian tribes" regarding applications submitted under IGRA Section 20.  As a neighboring tribe located just 20 miles from the Yuba Site, and as a member of the community surrounding the Yuba Site, the UAIC qualified as such a "nearby" tribe.  25 C.F.R. § 292.2.

49.     On January 16, 2009, the BIA solicited comments on the Enterprise Tribe's land-into-trust application from neighboring tribes and other community members, with comments due by March 17, 2009.  The UAIC was <u>not</u> included on the distribution list for the BIA's January 16, 2009 letter and learned of the BIA's solicitation of comments just days before the March 17 deadline.  Other nearby tribes also were excluded from the distribution list.

50.     On March 12, 2009, the UAIC submitted initial comments to the BIA and formally requested a 60-day extension of the comment period, until May 17,

2009, to fully respond to the issues raised by the Enterprise Tribe's proposed gaming facility.

51.     The BIA granted an extension to May 12, 2009, and the UAIC submitted further comments in a letter to the BIA on May 11, 2009.

52.     In its March 12 and May 11, 2009 letters to the BIA, and in numerous other submissions, the UAIC expressed its strong opposition to the Enterprise acquisition of the Yuba Site.

53.     Numerous other individuals and organizations expressed opposition to the Enterprise Tribe's proposed acquisition of the Yuba Site, including the California Tribal Business Alliance ("CTBA"), which submitted a letter to the BIA on February 27, 2009, stating that the Yuba Site "is not in the historical or cultural territory" of the Enterprise Tribe.  The CTBA further noted that "[t]he Enterprise Rancheria already has land that is eligible for gaming" and "is not a landless tribe," but rather "is seeking additional trust land in a more marketable location" that is "in the historic territory of the Nisenan people," from whom many members of the UAIC are descended.  The CTBA has stated that the historical connection to the Yuba Site "belongs to the [UAIC]," and that a gaming establishment at the Yuba Site "would be detrimental to the government and members of the [UAIC]."

54.     The voters of Yuba County rejected the Enterprise Tribe's casino project in November 2005, with 52.1% voting against it.

17

## C.      Subsequent Approval.

55.      Despite the opposition to the Enterprise acquisition, the DOI issued a
ROD on September 1, 2011, determining that gaming on the Yuba Site would not
be detrimental to the surrounding community.

56.      On August 31, 2012, Governor Jerry Brown concurred with the DOI
determination.  When Governor Brown announced his concurrence with the DOI
decision, he announced that he had already negotiated a compact with the
Enterprise Rancheria, which he will submit to the California Legislature for
ratification.

57.      On November 30, 2012, the Secretary filed a Notice of Intent to take
the Yuba Site into trust (published December 3, 2012).  Pursuant to 25 C.F.R. §
151.12(b), title to the Yuba Site may transfer, and the land may be taken into trust,
on January 2, 2013.  However, the Notice of Intent describes the parcel to be taken
into trust with an entirely different description than the Enterprise application
description above, and appears instead to describe the 80+-acre parcel, described as
Parcel "C" from which the 40 acres was to be cleaved, and nonetheless describes it
as a 40-acre parcel, known as Parcel "C."   The description in the Final Notice
states:

> The 40 acres are located approximately 4 miles southeast of the
> community of Olivehurst, near the intersection of Forty Mile Road
> and State Route 65 in Yuba County, California, described as: A
> portion of the East half of Section 22, Township 14 North, Range 4

East, 2 M.D.B.&M., described as follows: Commence at the North quarter corner of said Section 22 and being marked by 2 brass monument stamped LS3341 in a monument well as shown on Record of Survey No. 2000-15 filed in Book 72 of Maps, Page 34, County Records; thence South 0° 28' 11" East along the line dividing said Section 22 into East and West halves 2650.73 feet to a brass monument stamped LS3341 in a monument well as shown on said Record of Survey No. 2000-15 and marking the center of said Section 22; thence North 89° 31' 24" East 65.00 feet to a point on the East right of-way line of Forty Mile Road; thence North 0° 28' 11" West along said East right-of-way line of Forty Mile Road 45.53 feet to a ½ inch rebar with LS3751 marking the point of beginning thence from said point of beginning continue along said East right-of-way line of Forty Mile Road the following courses and distances: North 0° 28' 11" West 1133.70 feet; thence North 5° 14' 27" East 50.25 feet; thence North 0° 28' 31" West 750.00 to a ½ inch rebar with LS3751; thence leaving said East right-of-way line of Forty Mile Road run North 88° 00' 51" East 1860.00 feet to a ½ inch with LS3751; thence South 0° 28'11" East 1932.66 feet to a ½ inch rebar with LS3751; thence South 87° 59'10" West 1865.03 feet to the point of beginning Said land is also shown as Parcel "C" on Certificate of Lot Line Adjustment.  [¶] 2002-07 recorded June 26, 2002, Instrument No. 2002-08119.

58.    Once title to the Yuba Site transfers into trust, the Enterprise Tribe

may engage in gaming activities pursuant to IGRA.

**D.    Negative Impacts on the UAIC.**

59.    The proposed casino development on the Yuba Site will have

significant negative impacts on the UAIC, including but not limited to the

following.

60.    The proposed casino development will have a substantial, negative

financial impact on the UAIC, resulting in significant socio-economic and cultural

impacts on the UAIC.  The new casino will impact the UAIC's revenues from the

Thunder Valley Casino, which the UAIC operates.  The proposed casino

development will impact gaming revenues and food and beverage revenues at the

nearby Thunder Valley Casino.

61.     By decreasing the UAIC's revenues from the Thunder Valley Casino,

the proposed casino development will negatively impact the UAIC's governmental

operations and tribal member services.  The UAIC would be forced to consider

closing several grade levels at the tribal school, reducing or eliminating community

services that help tribal members overcome disproportionately high levels of

substance abuse and other personal problems, closing two tribally operated foster

care homes, and eliminating or reducing the UAIC's cultural resources protection

program.  The UAIC also would be forced to consider eliminating or reducing the

tribe's personal care program for tribal elders, eliminating nutritional programs,

after-school tutoring, and community events for tribal members that are intended to

strengthen the traditional cohesiveness and unity of the historic Auburn Rancheria,

and eliminating native language and culture classes, adult GED assistance, and

financial literacy classes.  The economic impact on the UAIC would also

significantly impair the UAIC's ability to broaden and diversify its economic base

beyond California tribes' exclusive right to offer class III gaming—a right that is

threatened by non-Indian gaming expansion.  The proposed casino development,

which will permanently alter the Yuba Site, will have negative socio-economic, historic, and cultural impacts on the UAIC.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### Defendants Violated the National Environmental Policy Act

62.    Plaintiff repeats and re-alleges the paragraphs set forth above, as if fully set forth herein.

63.    The actions by the Secretary, DOI, and BIA in certifying the FEIS, issuing the RODs, and approving the FTT were in violation of NEPA, 42 U.S.C. §§ 4321 *et seq.*, and its implementing regulations, 40 C.F.R. §§ 1500 *et seq.*

64.    In order for the Enterprise Rancheria to conduct gaming on the Yuba Site, IGRA requires that the Secretary make a Secretarial Determination of gaming eligibility.  25 U.S.C. §§ 2701 *et seq.*  To make such a determination, the Secretary must determine both that (1) a gaming establishment would be in the best interest of the applicant tribe (here, the Enterprise Rancheria) and its members, and (2) that it would not be detrimental to the surrounding community.  25 U.S.C. § 2719(b)(1)(A); 25 C.F.R. § 292.2; 25 C.F.R. Part 292 Subpart C.

65.    On September 1, 2011, the BIA published a ROD that announced that "a gaming establishment . . . would not be detrimental to the surrounding community."  This determination was in error.

66.     NEPA requires that "all agencies of the Federal Government shall . . . include in every recommendation or report on . . . major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official . . . ."  42 U.S.C. § 4332.

A.     **Defendants Failed to Take a "Hard Look."**

67.     Defendants failed adequately to consider the significant detrimental impact that the planned casino development will have on the UAIC.  Defendants failed to take a "hard look" at the environmental, socio-economic, aesthetic, historic, and cultural impacts of the proposed action.  42 U.S.C. §§ 4321 *et seq.*; 40 C.F.R. § 1508.8.  Taking a "hard look" requires "considering all foreseeable direct and indirect impacts" and a "discussion of adverse impacts that does not improperly minimize negative side effects."  *N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 975 (9th Cir. 2006) (citations and internal quotation marks omitted).

68.     The proposed casino project approved as part of the RODs will negatively impact the UAIC's cultural, socio-economic, and historic ties to the Yuba Site.  The Yuba Site falls within the UAIC's historic and traditional land base.  25 U.S.C. § 1300l-6(7).  Plaintiff UAIC maintains cultural, socio-economic, and historic ties to the Yuba Site.  As the federal government has recognized, the Yuba Site is located in the "service area" legislatively granted to the UAIC, pursuant to the Restoration Act.  *Id.*  Yet, Defendants failed to take a "hard look" at

22

the impact that the casino development would have on the UAIC's cultural, socio-economic, and historic interests in the land.  42 U.S.C. §§ 4321 *et seq.*; 40 C.F.R. § 1508.8.

69.     Additionally, the proposed casino project approved as part of the RODs will have a negative economic impact on the UAIC, which will result in significant negative socio-economic and cultural impacts on the UAIC.  The UAIC reservation is located approximately 20 miles from the Yuba Site—far closer than the Enterprise Rancheria.  The UAIC currently operates the Thunder Valley Casino in Lincoln, California, which is approximately 20 miles from the Yuba Site.  The economic environment is not conducive to the operation of another gaming facility so close to the UAIC's casino.  The Thunder Valley Casino has been forced to lay off approximately 5% of its workforce, and following a hiring freeze in January 2009, the UAIC was forced to lay off almost 100 part-time employees.  Furthermore, the UAIC has been forced by the economic downturn to postpone modifications to the existing facility.  The UAIC relies on the proceeds from the Thunder Valley Casino to support numerous initiatives, including a tribal school for tribal children who typically have failed in the local public school system, two foster care homes for tribal children, a personal care program for tribal elders, a cultural resources protection program, a community services program, nutritional programs, after-school tutoring, community events intended to strengthen the

traditional cohesiveness and unity of the Auburn Rancheria, native language and culture classes, adult GED assistance, and financial literacy classes.  Defendants failed to take a "hard look" at the negative impact that the proposed casino would have on the UAIC.  42 U.S.C. §§ 4321 *et seq.*; 40 C.F.R. § 1508.8.

70.    Defendants ignored or failed fully to consider or adequately address the environmental impact of the proposed casino development approved in the RODs.  The proposed casino development will negatively impact land resources, water resources, and air quality.  For example, the project is to be located on soils with high shrink-swell potential, yet Defendants have failed adequately to analyze and mitigate the potential impact to public health and safety.   Further, Defendants have failed adequately to consider the impacts to surface water quality, drainage, and groundwater.  Defendants also failed adequately to consider or address the cumulative effects of greenhouse gas emissions from the proposed casino development.  Thus, Defendants failed to take a "hard look" at the environmental impact of the proposed casino development.  42 U.S.C. §§ 4321 *et seq.*; 40 C.F.R. § 1508.8.

71.    To the extent that Defendants considered the environmental, economic, cultural, socio-economic, and historic impacts of the proposed casino development, Defendants improperly minimized the negative side-effects of the proposal in the RODs.  *See N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 975

(9th Cir. 2006) (holding that a "hard look" requires discussion of "adverse impacts that does not improperly minimize negative side effects") (citations omitted).  The RODs include a truncated list of concerns raised by the UAIC in a footnote, but essentially ignore these concerns.  The RODs do not include any analysis of UAIC's concerns or address the negative impacts to the UAIC.

72.    The regulatory and cumulative impacts of removing significant acreage from the sovereign control of state and local governments were not adequately addressed by Defendants.  Defendants also failed to provide support for the RODs' conclusion that transferring the Yuba Site into trust is necessary to satisfy the Enterprise Rancheria's goal of self-determination and other similar needs.  For example, the Defendants inadequately considered that the Enterprise Rancheria already has existing ancestral lands in another part of California in trust on which gaming can occur.  Defendants also failed adequately to assess the impact that this determination will have on local communities, as required by 25 C.F.R. § 151.10(e) and the NEPA analysis.

**B.    Defendants Failed Adequately to Consider Alternatives.**

73.    Defendants failed adequately to consider alternatives to taking the Yuba Site into trust for gaming purposes, as required by 40 C.F.R. § 1502.14. Defendants were required to "[r]igorously explore and objectively evaluate all reasonable alternatives . . . ." *Id*. Yet the Defendants failed adequately to consider

even whether the Enterprise Tribe could develop gaming on the land it already possesses.

**C.    Defendants Violated 40 C.F.R. § 1506.5.**

74.    Defendants failed to comply with 40 C.F.R. § 1506.5 when reviewing and approving the FEIS and RODs, in violation of the APA.  5 U.S.C. §§ 702, 704, 706.

75. The BIA hired AES to prepare the DEIS and FEIS.  At the time that AES prepared the DEIS and FEIS, AES was working with and as a part of tribal consortiums and casino interests.  The DEIS and FEIS were not prepared by independent regulators and were unduly influenced by and biased toward casino interests.

76. The BIA failed to "furnish guidance and participate in the preparation and . . . independently evaluate the [FEIS] prior to its approval," in violation of 40 C.F.R. § 1506.  40 C.F.R. § 1506.5(c).

77.    Defendants' actions in failing to take a "hard look" at the impacts of the proposed casino development approved in the RODs, failing adequately to consider alternatives, and violating 40 C.F.R. § 1506.5 were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  5 U.S.C. § 706. The administrative record therefore is insufficient to support the Defendants'

approval of the RODs or the Secretarial Determination to take the Yuba Site into

trust for gaming purposes.

## SECOND CLAIM FOR RELIEF

**Defendants Violated the Indian Gaming Regulatory Act, 25 C.F.R. Part 151, and 25 C.F.R. Part 292**

78.     Plaintiff repeats and re-alleges the foregoing paragraphs, as if fully set

forth herein.

79.     To acquire land in trust for a tribe, the Secretary and DOI must

comply with the regulations in 25 C.F.R. Part 151.  25 C.F.R. § 151.1.  In order to

permit gaming on certain land, the Secretary and DOI must comply with IGRA and

its implementing regulations, 25 C.F.R. Part 292.  25 U.S.C. §§ 2701 *et seq.*; 25

C.F.R.§ 292.1.

80.     Defendants failed to comply with 25 C.F.R. Part 151 and 25 C.F.R.

Part 292 when reviewing and approving the RODs and issuing the Notice of Final

Agency Determination that the government would "acquire approximately 40 acres

of land in trust for gaming purposes for the Enterprise Rancheria of Maidu Indians

of California . . . ."  Land Acquisitions; Enterprise Rancheria of Maidu Indians of

California, 77 Fed. Reg. 71,612 (Dec. 3, 2012).

81.     Defendants' failures to comply with the regulations set forth in 25

C.F.R. Part 151 included, but were not limited to, failure adequately to consider the

need of the Enterprise Rancheria "for additional land" and "[t]he purposes for which the land will be used."  25 C.F.R. §§ 151.10, 151.11.

82.     Defendants' failures to comply with the regulations set forth in 25 C.F.R. Part 292 included, but were not limited to, failure to consult with neighboring tribes and failure to consider comments from officials, citizens, and neighboring tribes.  25 C.F.R. §§ 292.13, 292.20.  For example, the DOI and BIA failed to solicit Plaintiff UAIC's input, even though UAIC is a "nearby Indian tribe[] . . . ."  25 C.F.R. §§ 292.2, 292.13(b), 292.19, 292.20.  Furthermore, once Plaintiff UAIC learned that the BIA had solicited comments on Enterprise's application to have the Yuba Site taken into trust, the DOI and BIA gave short shrift to Plaintiff UAIC's concerns.  25 C.F.R. § 292.20.

83.     By failing to comply with the procedures set forth in 25 C.F.R. Part 151 and 25 C.F.R. Part 292, Defendants' actions were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, in violation of the APA.  5 U.S.C. §§ 702, 704, 706.  The administrative record is insufficient to support the Defendants' approval of the RODs or the Secretarial Determination to take the Yuba site into trust for gaming purposes.

## THIRD CLAIM FOR RELIEF

### Defendants' Arbitrary and Capricious Actions Violated the APA

84.  Plaintiff repeats and re-alleges the foregoing paragraphs, as if fully set forth herein.

85.  Defendants' approval of the RODs and Secretarial Determination to take the land into trust for gaming purposes were arbitrary and capricious, unsupported by the administrative record, arbitrarily reliant on documents developed without required guidance, and otherwise not in accordance with the law.

86.  The Defendants failed even to accurately identify and describe the land to be taken into trust by the Secretary.  The Notice of Intent describes the parcel to be taken into trust with an entirely different description than the Enterprise application description above, and appears instead to describe the 80+-acre parcel, described as Parcel "C" from which the 40 acres was to be cleaved, and nonetheless describes it as a 40-acre parcel, known as Parcel "C."   The description in the Final Notice states:

> The 40 acres are located approximately 4 miles southeast of the community of Olivehurst, near the intersection of Forty Mile Road and State Route 65 in Yuba County, California, described as: A portion of the East half of Section 22, Township 14 North, Range 4 East, 2 M.D.B.&M., described as follows: Commence at the North quarter corner of said Section 22 and being marked by 2 brass monument stamped LS3341 in a monument well as shown on Record of Survey No. 2000-15 filed in Book 72 of Maps, Page 34, County Records; thence South 0° 28' 11" East along the line dividing said Section 22 into East and West halves 2650.73 feet to a brass

monument stamped LS3341 in a monument well as shown on said
Record of Survey No. 2000-15 and marking the center of said Section
22; thence North 89° 31' 24" East 65.00 feet to a point on the East
right-of-way line of Forty Mile Road; thence North 0° 28' 11" West
along said East right-of-way line of Forty Mile Road 45.53 feet to a ½
inch rebar with LS3751 marking the point of beginning thence from
said point of beginning continue along said East right-of-way line of
Forty Mile Road the following courses and distances: North 0° 28' 11"
West 1133.70 feet; thence North 5°14' 27" East 50.25 feet; thence
North 0° 28' 31" West 750.00 to a ½ inch rebar with LS3751; thence
leaving said East right-of-way line of Forty Mile Road run North
88° 00' 51" East 1860.00 feet to a ½ inch with LS3751; thence South
0° 28'11" East 1932.66 feet to a ½ inch rebar with LS3751; thence
South 87° 59' 10" West 1865.03 feet to the point of beginning Said
land is also shown as Parcel "C" on Certificate of Lot Line
Adjustment.  [¶] 2002-07 recorded June 26, 2002, Instrument No.
2002-08119.

This apparent mismatch of property descriptions between the application, the

RODs, and the Final Notice results in the Final Notice providing either a defective

description of the wrong parcel or an unexplained substitution of a parcel not

adequately considered by the BIA and the Secretary.  The Defendants' actions in

misidentifying the land to be taken into trust were arbitrary and capricious and

otherwise not in accordance with law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff UAIC respectfully requests that this Court

enter judgment in its favor and against Defendants, and each of them, as follows:

A. That this Court declare, adjudge, and decree that the RODs are contrary to law and order the Defendants to set aside and vacate the RODs and enjoin their implementation;

B. That this Court declare, adjudge, and decree that Defendants failed to comply with NEPA or to assess in an unbiased fashion impacts that acquiring the Yuba Site in trust for the Enterprise Rancheria would cause on the UAIC;

C. That this Court declare, adjudge, and decree that the FEIS for the fee-to-trust transfer and the related casino project failed to meet the requirements of NEPA and order the Defendants to set aside and vacate any action based on the FEIS;

D. That this Court declare, adjudge, and decree that Defendants' decision to acquire the Yuba Site in trust for the Enterprise Rancheria violated the Indian Gaming Regulatory Act and its implementing regulations and order the Defendants to set aside and vacate the Secretarial Determination to take the Yuba Site into trust;

E. That this Court enter judgment and an order enjoining Defendants from taking the Yuba Site into trust on behalf of the Enterprise Rancheria, and enjoining Defendants from approving or implementing any aspect of the project described in the RODs;

F.  That this Court enter judgment and an order awarding Plaintiff

UAIC's costs and reasonable attorney's fees; and

G. That this Court award Plaintiff UAIC such further relief as the Court

deems just and proper.

Respectfully submitted,

/s/ *Jason R. Scherr*
Jason R. Scherr, Bar No. 466645
jr.scherr@bingham.com
Bryan M. Killian, Bar No. 989803
bryan.killian@bingham.com
BINGHAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006-1806
Telephone:   202.373.6000
Facsimile:   202.373.6001

Dated:   December 12, 2012